**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.  1:11-cv-24599-MGC

CHEVRON CORPORATION,

      Plaintiff,

vs.

BANCO PICHINCHA,

      Defendant.

_____/

**BANCO PICHINCHA, C.A., MIAMI AGENCY'S OPPOSITION TO APPLICATION OF
CHEVRON CORPORATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

Banco Pichincha, C.A., Miami Agency (the "Agency"), hereby responds in opposition to Chevron Corporation's ("Chevron") Application for an Order Pursuant to 28 U.S.C. § 1782 (D.E. 1) and associated Memorandum (D.E. 4) (collectively, the "Application"). In support, the Agency submits the Declarations of Evan Acosta ("Acosta Decl.") and Dr. Carmen Zambrano Semblantes ("Zambrano Semblantes Decl.")[1] and states:

**I.    Introduction**

This action is Chevron's second attempt in this District to force Banco Pichincha, C.A. in Ecuador to produce documents located in Ecuador in violation of Ecuadorian civil and criminal laws.  Chevron's first attempt was thwarted as a result of a stay entered by the United States Court of Appeals for Second Circuit in related proceedings.  Undaunted, Chevron instituted this action as an attempted, but thinly veiled, "end run" around the Second Circuit's stay. Remarkably, in this action, Chevron purportedly seeks the production of documents located in Ecuador for use in proceedings in Ecuador, without regard to the laws in Ecuador that require that documents such as those Chevron seeks be maintained confidential unless certain disclosure requirements are met.

---

[1] The Acosta Decl. is attached as Exhibit A.  A certified translation of the Zambrano Semblantes Decl., along with the original Spanish language version and a copy of her curriculum vitae, are attached as Composite Exhibit B.

Prior decisions have thoroughly detailed this case's history.[2]  Still, some background is necessary to resolve the issues Chevron raised in its Application.  In 1993, residents of Ecuador's Oriente region sued Chevron's predecessor in interest, Texaco, in the Southern District of New York alleging that it caused personal injuries and catastrophic environmental damage.  *Id.* at 388-89 (citing *Jota*, 157 F.3d at 155).  Texaco moved for dismissal on *forum non conveniens* and international comity grounds.  *Id.* at 389 (citing *Jota*, 157 F.3d at 156).  After *nine years and two appeals*, Chevron's predecessors in interest secured dismissal of plaintiffs' complaint by: (1) unambiguously agreeing to be sued in Ecuador, accept service of process in Ecuador, and waive any statute of limitations-based defenses that may have matured since the filing of the complaint; (2) offering to satisfy any judgments in plaintiffs' favor, reserving its right to contest their validity only in the limited circumstances permitted by New York's Recognition of Foreign Country Money Judgments Act; and (3) affirming those concessions on appeal.  *Id.* at 390, 390 nn. 3-4 (citations omitted).

Ultimately, plaintiffs obtained an $18.2 billion judgment in Ecuador.  Chevron appealed.  Chevron also sought to preempt plaintiffs from enforcing their judgment anywhere in the world.  Chevron petitioned the Southern District of New York—the same court it convinced that the case had everything to do with Ecuador and nothing to do with the United States—to declare that the $18.2 billion judgment entered by another sovereign state's judiciary is not recognizable or enforceable.  In September 2011, the United States Court of Appeals for the Second Circuit vacated the District Court's preliminary injunction and stayed that case.

Additionally—a few days after Chevron filed the Application—the Ecuadorian appeals court upheld the $18.2 billion judgment.  Chevron then filed an emergency motion in the Second Circuit, requesting that the Second Circuit vacate its prior order, hold reargument on the appeal and lift the stay of the proceedings below.  That motion was denied.

Yet, Chevron has not only targeted its adversaries, it also has targeted innocent bystanders like the Agency.  For one, last August, Chevron petitioned this Court to order the Agency to produce in the United States documents located in Ecuador in an attempt to force the Agency to violate the laws of Ecuador.  Indeed, Chevron requested the same documents in that

---

[2] *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 388 (2d Cir. 2011) (citing *Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002); *Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir. 1998); *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334 (S.D.N.Y. 2005); *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534 (S.D.N.Y. 2001); *Aguinda v. Texaco, Inc.*, 945 F. Supp. 625 (S.D.N.Y. 1996)).

subpoena that it requests in this case. Chevron's motion to compel was fully briefed, and Magistrate Judge O'Sullivan heard oral argument. However, prior to any ruling, the Second Circuit entered its September stay order. As a result, the prior action in this district also was stayed and administratively closed.

## II.   Argument

Chevron's Application should be denied. First, the Agency already has produced to Chevron, in response to the prior subpoena, the responsive documents in the Agency's custody, possession or control. Second, Section 1782 does not extend to documents that may be located outside of the United States. Third, international comity considerations do not compel the Agency to attempt to violate Ecuador's substantive law by producing the requested documents, especially when Chevron has not even attempted to use available international discovery procedures.

### A.   Legal Standard

A district court is not required to allow a Section 1782 discovery request. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (quoting *United Kingdom v. U.S.*, 238 F.3d 1312, 1319 (11th Cir. 2001)); *see* S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), reprinted at 1964 U.S.C.C.A.N. 3782, 3788 (explaining that section 1782 "leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable")). Importantly, in the guise of a Section 1782 request, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *United Kingdom v. U.S.*, 238 F.3d at 1318 (quoting 28 U.S.C. § 1782(a)). Thus, a district court has the authority to grant an application for judicial assistance if: (1) the person from whom discovery is sought resides or is found in the district of the district court ruling on the application for assistance; (2) the request seeks evidence which is either the "testimony or statement" of a person or the production of "a document or other thing;" (3) the evidence is "for use in a proceeding in a foreign or international tribunal;" and (4) the request is made by "an interested person." *In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *5 (S.D. Fla. Jan. 19, 2011) (Simonton, Mag. J.).

Assuming that the district court is statutorily authorized to grant an application for judicial assistance under Section 1782, the Court **maintains the discretionary authority to**

**deny** the application based on the four factors enumerated by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *Id.* First, in *Intel*, the Court counseled that it was appropriate to consider whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for judicial assistance may be reduced in instances where "a foreign tribunal [with] jurisdiction over those appearing before it ... can itself order them to produce evidence." *Id.* (quoting *Intel*, 542 U.S. at 264). Second, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* (quoting *Intel*, 542 U.S. at 264). Third, "a district court could consider whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* (quoting *Intel*, 542 U.S. at 265). Fourth, and finally, "unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* (quoting *Intel*, 542 U.S. at 265).

Courts have often cited the legislative history accompanying the 1964 amendments to Section 1782, which emphasize the twin aims of the statute to (1) provide efficient assistance to foreign tribunals and litigants; and (2) encourage foreign countries to similarly improve their procedures for providing assistance to American courts. *Id.* at *6 (citing S.Rep. No. 88-1580 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3783; *see also In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

If a court determines that the above requirements are met, the court next must determine whether the requested discovery complies with the Federal Rules of Civil Procedure. *Id.* Thus, if the applicant issues a subpoena to a non-party who is residing or found within the district, the subpoena must comply with Rule 45. *Id.*

**B.      Section 1782 does not extend to documents located outside of the United States.**

The Agency does not dispute that: (1) it is found in this District; (2) the Application seeks the production of documents; (3) the Application seeks evidence "for use in a proceeding in a foreign or international tribunal;"[3] and (4) Chevron is "an interested person."   Even so,

---

[3]      The Agency does not agree that the status of the foreign proceedings warrants the granting of Chevron's Application.

4

Chevron's Application should be denied, because the "body of case law suggests that § 1782 is not properly used to seek documents held outside the United States as a general matter". *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 50-55 (D.D.C. 2005); *In re Godfrey*, 526 F. Supp. 2d 417, 423-24 (S.D.N.Y. 2007) (quoting same, collecting cases and finding discovery under Section 1782 was inappropriate because documents were located in Russia); *see, e.g., Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (acknowledging support for view that Section 1782 does not encompass discovery of material located in foreign countries, but not ruling on whether Section 1782 can ever support discovery of materials outside United States); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194n.5 (S.D.N.Y. 2006) ("§ 1782 **does not authorize discovery of documents held abroad** . . ..")  (emphasis added);  *In re Application of Nokia Corp.*, No. 1:07-MC-47, 2007 WL 1729664 (W.D. Mich. June 13, 2007) (citing cases); *In re Application of Sarrio S.A.*, No. 9-372, 1995 WL 598988, at *2 (S.D.N.Y. Oct. 11, 1995) ("[I]t seems clear that, despite its unrestrictive language, Section 1782 was **not intended to provide discovery of evidence maintained within a foreign jurisdiction**.") (emphasis added).

Legislative history also compels the conclusion that the statute was intended to aid "in obtaining oral and documentary evidence in the United States," S.Rep. No. 88-1580 (1964), and was "not intended to provide discovery of evidence within a foreign jurisdiction." *Godfrey*, 526 F. Supp. 2d at 423 (quoting *In re Sarrio, S.A.*, 1995 WL 598988, at *3 (S.D.N.Y. 1995)). Further, Professor Hans Smit—the drafter of Section 1782 (*id.* at 422)—"has made it clear that the drafters of § 1782 did not intend that the statute be used to compel documents located in a foreign country for use in a foreign proceeding and that there are 'potent reasons' why this is so". *Id.* at 423 (quoting Smit, 25 Syracuse J. Int'l L. & Com. at 11). "This is because, first, the purpose of § 1782 is to make available evidence located in the United States. 'Thus, a harmonious scheme is established: Evidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States.'" *Id.* "Second, it would interfere with international courts if, for example, litigants in Spain could use § 1782 to obtain evidence located in Spain that could not be obtained through Spanish proceedings." *Id.* "Third, use of §1782 for evidence located outside of the United States could turn American courts into

'clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world.'" *Id.* (quoting same).

Chevron relies on *Intel Corporation v. Advanced Micro Devices, Inc.* 542 U.S. 241 (2004). But *Intel* did not address the question presented here: whether Section 1782 authorizes discovery of documents located abroad. *See In re Godfrey*, 526 F. Supp. 2d 417, 424 (S.D.N.Y. 2007) ("[T]here is no reason to conclude that *Intel* stands for the proposition that § 1782 may be used to compel discovery of documents located abroad for use in foreign judicial proceedings."). *Intel* concerned a petition from AMD for certain documents produced by Intel in a private antitrust suit in a Federal District Court in Alabama and held on file by that court. Although the *Intel* Court refused to read a "foreign-discoverability" requirement into Section 1782(a) it implicitly assumed that evidence discoverable under Section 1782(a) would be located in the United States. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-62, 264 (2004) ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, *available in the United States*, may be unobtainable absent § 1782(a) aid") (emphasis added); *Godfrey*, 526 F. Supp. 2d at 423-24.  In this action, the subject documents are located in Ecuador and purportedly are intended for use in proceedings in Ecuador.  Section 1782, therefore, should not be invoked by this Court.

     **C.**     **The *Intel* discretionary factors mandate denial of the Application.**

          **1.**     **Although the Agency is not a participant in the foreign proceedings, Chevron seeks documents that are subject to jurisdiction there.**

The Agency is not a party to any proceedings in Ecuador.  Nevertheless, Chevron seeks documents that are located in Ecuador and subject to the jurisdiction of an Ecuadorian court. This fact "cuts against the general concern underlying an inquiry into whether the person from whom information is sought was a participant in the proceedings abroad." *In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, --- F. Supp. 2d ---, 2011 WL 5127624, at *6 (D.D.C. Oct. 31, 2011) (finding that other factors, on balance, weighed against granting petition).

Indeed, "it would be a less efficient means of assistance to participants in any [Ecuadorian] proceeding (not to mention, of questionable prudence) for this Court to direct" the Agency to direct an Ecuadorian bank to produce Ecuador-based documents or information about Ecuadorian bank accounts for use by Chevron in Ecuador to avoid enforcement of a judgment entered and affirmed by Ecuadorian courts. *Id.* at *7 ("It would be a less efficient means of

assistance to participants in any French proceeding (not to mention, of questionable prudence) for this Court to direct a French entity, through its U.S.-based subsidiary, to produce France-based documents or information about French assets to a French court in petitioners' attempt to satisfy a French judgment.").

> **2.      The foreign proceedings have either ceased or are at a preliminary stage.**

Chevron acknowledged that its foreign appeal has concluded (*see* D.E. 18) and the arbitral tribunal has yet to decide whether it has jurisdiction to proceed (*see* D.E. 5 at 19). Thus, Chevron's arbitration is at a preliminary stage, and this factor does not tip the balance of factors in Chevron's favor.  At most, this factor is neutral.

> **3.      The location of the documents—in Ecuador—tips the scales against granting Chevron the requested relief.**

The "location of the information militates against granting" Chevron's petition. *In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, --- F. Supp. 2d ---, 2011 WL 5127624, at *6 (D.D.C. Oct. 31, 2011).  Here, too, Chevron does not dispute that the documents it requests "lie outside this jurisdiction and indeed outside this country." *Id.* Thus, even if this Court does not conclude that there is a per se bar to such discovery, the Court "may nevertheless consider the geographical location of information in determining whether the exercise of its discretion is warranted."  *Id.* (declining to address whether such a bar exists but finding that the location of information militated against granting petition).

> **4.      Granting Chevron's Application would frustrate Section 1782's objectives.**

Again, the twin aims of Section 1782 are to (1) provide efficient assistance to foreign tribunals and litigants; and (2) encourage foreign countries to similarly improve their procedures for providing assistance to American courts. *In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *6 (S.D. Fla. Jan. 19, 2011) (Simonton, Mag. J.) (citing S.Rep. No. 88-1580 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3783; *see also In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

But here, "it is unlikely that this Court's granting of the petition would further the objective of encouraging foreign countries to provide similar means of assistance to U.S. courts."

*In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, --- F. Supp. 2d ---, 2011 WL 5127624, at *7 (D.D.C. Oct. 31, 2011). Ordering a non-party in a private civil action by Chevron to violate the laws of a different foreign sovereign on that sovereign's own territory (*see infra*) would only undermine the objective of encouraging foreign countries to provide similar means of assistance to U.S.  All the more because Chevron has had more than ample time—but has not even attempted—to use available international discovery procedures.

   5. **Chevron appears to be trying to circumvent foreign proof-gathering restrictions.**

  "Although the court is not required to evaluate whether discovery requests in a § 1782 application 'comply with the foreign country's discovery laws,' the court 'must' consider whether 'the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules.'"  *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011) (Goodman, Mag. J.) (quotation omitted).  Also, while the statute does not expressly reference a requirement of discoverability, the Court should assess whether, in seeking the discovery, Chevron is attempting to evade Ecuadorian law.  Here, Chevron appears to be trying to circumvent foreign proof-gathering restrictions.  *See infra* Part II.D.[4]  *See generally* Zambrano Semblantes Decl.

   6. **Chevron's requests are unduly intrusive and burdensome.**

  Finally, "unduly intrusive or burdensome requests may be rejected or trimmed."  *In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *5 (S.D. Fla. Jan. 19, 2011) (Simonton, Mag. J.).  Here, Chevron's requests are unduly intrusive and burdensome.  *See infra* Part II.D.  *See generally* Zambrano Semblantes Decl.; Acosta Decl.

  D. **The Application should be denied because the requested discovery does not comply with Rule 45.**

  Once a court determines that the above requirements of Section 1782 are met, the next step is to determine whether the requested discovery complies with the Federal Rules of Civil Procedure.  *In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, No.

---

[4] Part II.D shows that Chevron appears to be trying to circumvent foreign proof-gathering restrictions because this discovery would violate Ecuadorian law. Likewise, Part II.D shows that Chevron's requests are unduly intrusive and burdensome. To avoid repetition, the Agency will make these arguments but once.

08-20378-MC, 2011 WL 181311, at *6 (S.D. Fla. Jan. 19, 2011) (Simonton, Mag. J.).  Thus, if the applicant issues a subpoena to a non-party who is residing or found within the district, the subpoena must comply with Rule 45.  *Id.*  Chevron's subpoena does not.

### 1.    The Motion should be denied because the Agency has already produced the documents within its possession, custody or control.

The mere presence in the Southern District of Florida of an agent does not require the Court to enforce a subpoena seeking production of documents that are located outside of the District.  *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982) (citing *Cates v. LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir. 1973)).  In *Ariel*, the trial court (Southern District of Florida) quashed a subpoena for documents directed to a non-party, the United States Olympic Committee, which had an agent for process in the District, but where the documents subpoenaed were located in the District of Colorado. *Id.* at 1060-61 (explaining that it is unreasonable to assume that local offices controlled all documents kept at respective corporate headquarters and in absence of such control, existence of personal jurisdiction was insufficient to create jurisdiction over documents which were outside of District) (citing *In Re N. Am. Acceptance Corp.*, 21 F.R.Serv.2d 612, 614-15, 617, 1975 U.S. Dist. LEXIS 16769, at *14-15 (N.D. Ga. 1975)); *see Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV, 2003 WL 25589034, at *2 (S.D. Fla. June 24, 2003) (citing *Ariel*, 693 F.2d at 1059-61 and rejecting an argument that because a non-party did business in the District, the Court had the power to order production of documents maintained by the non-party outside of the District).

In *In Re North American Acceptance Corp.*, cited with approval by the Eleventh Circuit in *Ariel*, the issue was "whether the territorial limitations imposed by Federal Rule of Civil Procedure 45(d)(2) apply to protect a nonparty corporation, served with a subpoena in a District outside of the state of its principal place of business, when the subpoena calls for the production in that District of documents located at its principal offices...." 1975 U.S. Dist. LEXIS 16769, at *8; *see Ariel v. Jones*, 693 F.2d at 1060 (quoting same). There, the court reversed the bankruptcy court's order compelling non-parties who were transacting business in Georgia—but whose principal places of business were in New York—to produce documents in Atlanta pursuant to subpoenas. *Id.* at *2, 5, 8-9. It concluded:

> A corporation may not realistically be considered fungible everywhere it does business. Therefore, even positing that this court has personal jurisdiction…, it is unreasonable to assume that these appellants' local offices "control" all documents kept at their respective

corporate headquarters…. In the absence of such control, therefore, even the existence of personal jurisdiction in this court is insufficient to create jurisdiction over the documents which are outside of the district.

1975 U.S. Dist. LEXIS 16769, at *14-15; *see Ariel v. Jones*, 693 F.2d at 1060-61 (quoting same).

Here, the Agency does not control documents in the custody of Banco Pichincha, C.A.'s (the "Bank") corporate headquarters in Ecuador.  Acosta Decl. ¶¶ 9-13, 16, 18-21. The Agency is jointly supervised by the Florida Office of Financial Regulation ("OFR") as well as by the Board of Governors of the Federal Reserve ("FRB") (jointly referred to hereinafter as the "Banking Regulators"). *Id.* ¶ 9. On the basis of their statutory and regulatory authority, the Banking Regulators require international banking agencies of foreign banks in the United States to function as separate/stand-alone banking operations.  *Id.* ¶ 10. Based upon this policy, Banking Regulators require international banking agencies of foreign banks in the United States to: (a) conduct their operations and activities separate and apart from those of the foreign bank; (b) maintain their own customer base and customer accounts; (c) maintain their own books and records (separate from those of the foreign bank); and (d) maintain their own general ledger and other financial records. *Id.* ¶ 11.

In compliance with these requirements, it is the customary practice for an international banking agency in Florida, such as the Agency, to conduct its operations as if it were a separate financial institution from the foreign bank. *Id.* ¶ 12. Consistent with the requirements of Banking Regulators, the Agency operates separately and independently from the Bank, maintaining its own separate capital accounts, books and records, general ledgers and other financial records, electronic systems, as well as its own separate customer base and customer account records from those of the foreign bank. *Id.* ¶ 13.

Thus, the existence of personal jurisdiction over the Agency in this District is insufficient to create jurisdiction over any documents that may be at the Bank in Ecuador. *See Ariel*, 693 F.2d at 1061; *Gutescu,* 2003 WL 25589034, at *2.

For the same reasons, Chevron's argument that Florida does not recognize the corporate distinction between the Agency and the Bank is irrelevant and without merit.  Each branch of a bank is treated as a separate entity, in no way concerned with accounts maintained by depositors in other branches or at a home office. *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558, 560 (S.D.N.Y. 2003) (finding New York branch was insufficient to render accounts outside of New York subject to attachment); *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan*

*Guarantee Corp.*, 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996) (finding that separate entity rule prohibited attempt to execute against assets held in Philippine bank's Manila office by moving against bank's New York branch; agreeing that New York branch and the Manila office should be viewed as separate entities); *see Quaestor Invs. Inc. v. State of Chiapas*, No. CV-95-6723, 1997 WL 34618203, at *7 (C.D. Cal. Sept. 2, 1997) (rejecting argument that asset on deposit with bank in Mexico was "in" United States because bank had Los Angeles branch and customer was capable of accessing accounts from within California).

Chevron has a remedy; it can go to Ecuador to get documents in possession of the Bank. *See Ariel*, 693 F.2d at 1061; *Gutescu*, 2003 WL 25589034, at *2.  As it has conceded, Chevron can use letters rogatory to that end. *See Chevron Corp. v. Banco Pichincha*, Case No. 11-CV-23049, D.E. 1 at 19 ("letters rogatory are the only available method for Chevron to obtain *evidence possessed by a non-party located in Ecuador* …") (emphasis added.) .

Chevron's cases on this issue are not controlling, particularly in light of *Ariel*, and are also distinguishable. *Equitable Plan* actually supports the Agency's argument. *See In re Equitable Plan Co.*, 185 F. Supp. 57, 60 (S.D.N.Y. 1960) (granting Canadian bank's motion to quash to extent that records of Cuban branch need not be produced). *Dietrich* is distinguishable because a parent company was served with the subpoena and was found to control its subsidiary who was in possession of the documents.  *Dietrich v. Bauer et al.*, No. 95-civ-7051(RWS), 2000 WL 1171132, at *3-4 (S.D.N.Y. Aug. 16, 2000).  Unlike in *Dietrich*, where the parent company did not argue that it was unable to direct its subsidiary to provide it with the sought-after documents, the Agency has shown that it is unable to direct its Ecuadorian corporate headquarters to provide it with the sought-after documents to the extent that they may exist in Ecuador. *See* Acosta Decl. ¶¶ 16, 18, 21. *Dietrich* is also distinguishable because the parent company failed to even identify considerations of comity; it only asserted in a conclusory fashion that international discovery procedures were appropriate.  Here, by contrast, considerations of comity weigh against: (1) ordering a non-party witness in a private civil action by Chevron to violate the laws of a different foreign sovereign on that sovereign's own territory; (2) resolving the question of whether enforcement of Chevron's subpoenas would cause a violation of Ecuadorian law or a circumvention of its procedures, which is a question of Ecuadorian law that is best resolved by Ecuadorian courts; and (3) crossing international boundary lines to attempt to

11

enforce Chevron's subpoena in a foreign country. *See Ings v. Ferguson*, 282 F.2d 149 (2d Cir. 1960); *Laker Airways Ltd. v. Pan American World Airways*, 607 F. Supp. 324 (S.D.N.Y. 1985).

### 2. A non-party in a private civil action by Chevron should not be compelled to attempt to violate Ecuador's substantive law.

In determining whether to apply international discovery procedures or those of the Federal Rules, it is important to focus on the status of the person from whom discovery is sought. *See, e.g., First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998) (citing *Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638(SWK), 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 526-27 (S.D.N.Y. 1987) (noting that historically "restrictive" Second Circuit law on ordering disclosure in the face of foreign disclosure laws probably evolved because the cases concerned non-parties and that "it is ... important to focus on the status in the litigation at hand of the party resisting discovery")).

### a. The Court should decline to cross international boundary lines to enforce Chevron's subpoena in a foreign country.

An elementary principle of jurisdiction is that the processes of the courts of any sovereign state cannot cross international boundary lines and be enforced in a foreign country. *Ings*, 282 F.2d at 151. Each state by the very definition of sovereignty is entitled to declare its own national policy with respect to such limitations upon the production of records as its lawmakers may choose to enact. *Id.* Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures. *Id.* at 152.

In *Ings*, a subpoena duces tecum served on the New York agency of a Canadian bank sought records located in Canada. *Id.* at 150. Just as here, the banks in question were only witnesses—not parties—and procedures were available for securing evidence by letters rogatory. *Id.* at 150-152. Ultimately, the court modified the subpoena to only require production of documents in the possession of agencies in New York. *Id.* at 153, reasoning:

> Subpoena power is not absolute. Even if exercised within proper territorial limits, the subpoena may be scrutinized by the courts. Every reason exists for careful scrutiny here. No claim is being made against either bank by any litigant. At most the bank is being called as a witness. The transactions did not originate in the New York Agencies. And the records sought are in the custody of branches in Canada. Under these circumstances it seems highly undesirable that the courts of the United States should countenance service of a subpoena upon a New York agency of a foreign bank which is not a party to the litigation and whose country

has provided procedures for securing information, the production of which is consistent with its laws.

*Id.* at 152; *see Laker Airways Ltd. v. Pan American World Airways*, 607 F. Supp. 324, 325-26 (S.D.N.Y. 1985) (vacating subpoenas to non-party witnesses in private civil action by Laker Airways, who suggested that non-party witnesses colluded to deny financing to Laker; *Laitram Corp. v. Hale*, 438 So.2d 269 (La. Ct. App. 1983) (refusing to compel foreign bank to produce confidential records of customers' transactions without going through diplomatic procedures) (citing *Ings*). In the same way, it would be inappropriate to require the Agency to produce records—which may be maintained in Ecuador—in Florida for use in foreign proceedings.

The Agency also has shown that it does not have the power to direct the Ecuadorian corporate headquarters to send Ecuadorian bank records out of the country. Acosta Decl. ¶¶ 16, 18, 21; *see Ings*, 282 F.2d at 152 (distinguishing case from one where home office had power to cause branch records to be sent to home office).  Even if Chevron questions whether removal of records from Ecuador is prohibited, it is unnecessary to resolve this question, because it is a question of Ecuadorian law best resolved by Ecuadorian courts. *Ings*, 282 F.2d at 152.[5]

Chevron previously conceded that it could use letters rogatory, but it considers them to be time consuming, expensive, and less certain to produce evidence than direct use of the federal rules. *See Chevron Corp. v. Banco Pichincha*, Case No. 11-CV-23049, D.E. 1 at 19-21. But the court in *Ings* already rejected the same argument:

> Nor should the desire for haste because of the pendency of the New York stockholders' action justify a departure from authorized procedures. Were temporary expediency in every situation to create its own rules, well established principles of jurisdiction and due process would surely suffer. The zeal of the Trustee in endeavoring to benefit the many persons who may have been victimized by the indicted fugitive from justice is commendable but it should not be the basis for permitting him to avoid following the prescribed process for seeking information in a foreign country.

*Ings*, 282 F.2d at 153. If records are obtained through letters rogatory, then Chevron has by authorized means achieved its desire. *Ings*, 282 F.2d at 152-53. On the other hand, if production

---

[5] The *Ings* court also did not resolve the important policy questions the banks raised as to branch banking throughout the world: whether a subpoena served on a branch in New York might necessitate a search for, and the production of, records in hundreds of branches of foreign banks; and whether retaliatory laws might be enacted to the detriment of American business interests if such subpoenas are enforced. *Id.* at 153.

were declared illegal by the court in Ecuador, then no further action should be taken by a U.S. court. *Id.* at 152-53.

        **b.**    **An American court should not compel a non-party with no interest in the outcome of the litigation to violate the laws of a different foreign sovereign on that sovereign's own territory.**

Principles of comity should prevent the Court from ordering violations of foreign laws. *See In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) ("[I]t causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question.").   Here, Chevron asks the Court to order a non-party, that has not been accused of any wrongdoing and is not the focus of any criminal investigation, to violate Ecuadorian law in Ecuador by turning over bank documents which may be situated in that foreign country in violation of Ecuador's laws. This cannot be. The reasoning of the *Sealed Case* is apt:

> We have little doubt, for example, that our government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders.  The legal expression of this widespread sentiment is found in basic principles of international comity.  But unless we are willing simply to enter contempt orders in all such cases, no matter how extreme, in utter disregard of comity principles, we are obliged to undertake the unseemly task of picking and choosing when to order parties to violate foreign laws. . . . These kinds of concerns bring us very close to the act of state doctrine, which, though it arises in a different context, cautions courts not to "sit in judgment on the acts of the government of another done within its own territory."

*Id.*  Put another way, the court should not order the bank to comply because it "may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere."  *Id.*

The Eighth Circuit agrees.  *See United States v. Rubin*, 836 F.2d 1096 (8th Cir. 1988). There, the subpoena requested bank records of two Cayman Island residents in a prosecution for securities fraud and for filing false securities registration statement.  But the bank officer would have violated Cayman law and subjected himself to criminal sanctions if he produced banking records and the defendant could have obtained records by petitioning the Grand Court of the Cayman Islands.  As a result, the court affirmed the district court's quashing of a subpoena duces tecum served on the bank officer. It explained:

> The cases cited by Rubin ordering foreign banks to comply with a subpoena, are not dispositive. In those cases the government was seeking the bank records of United States

citizens who are the target of a United States criminal proceeding….The records are necessary to determine if a United States citizen has violated laws of the United States.

*Id.* (citing *United States v. Field*, 532 F.2d 404 (5th Cir.), *cert. denied* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Bank of Nova Scotia*, 740 F.2d 817 (11th Cir. 1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985); *United States v. Davis*, 767 F.2d 1025 (2d Cir. 1985)).   Here, Chevron is attempting to obtain a foreign non-party's records of foreign non-parties' activities, <u>ostensibly for use in a proceeding in the country in which the subject documents are located</u>.  But the non-parties whose records Chevron is seeking are neither the target of a United States criminal proceeding nor subject to the laws of the United States. Hence, the records Chevron seeks are not necessary to determine if a U.S. citizen has violated laws of the United States. And thus, the privacy interest at issue here is that of foreign non-party account-holders; not that of an American citizen (or entity) subject to American laws. This case is more analogous to the *Sealed Case* where banks and their officers could face criminal and civil penalties, including incarceration, if they produced any documents in the possession of the Bank in Ecuador.  Zambrano Semblantes Decl. at 2, 7-9. They could also face civil suits for damages from the account-holders whose privacy rights have been violated. *Id.* at 7-9.  Meanwhile, Chevron has not even attempted to obtain these documents in Ecuador.

### c.   Comity favors the non-parties because Chevron has argued for years that Ecuador has a greater interest in the transactions and events of this case.

Chevron has argued for years that Ecuador has a greater interest in the transactions and events of this case. Again, Chevron secured a dismissal on *forum non conveniens* and international comity grounds in favor of Ecuador.  *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 389-90 (2d Cir. 2011) (citing *Jota v. Texaco, Inc.*, 157 F.3d 153, 156 (2d Cir. 1998); *id.* at 390n.3. Indeed, in seeking affirmance of the second dismissal order, Chevron's predecessors in interest argued:

> By every reasonable standard, these cases belong in Ecuador because **they "have everything to do with Ecuador and nothing to do with the United States** ...,' as the voluminous record reflects. *Aguinda*, 142 F. Supp. 2d at 537. Despite significant discovery, plaintiffs came up "bone dry" in their "effort to establish a meaningful nexus between the United States and the decisions and practices here complained of," as Judge Rakoff concluded after reviewing plaintiffs' arguments. *Id.* at 550. Far from committing clear error, Judge Rakoff would have abused his discretion had he not granted Texaco's motion on this record.

15

Br. of Appellees, *Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002) (No. 2001-7756), 2001 WL 36192276 (emphasis added).

> **d.     Even under *Aérospatiale's* footnote factors or the Restatement, the balance of factors favors the non-parties.**

Chevron cites other cases where the footnote factors from *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522 (1987), or the Restatement were analyzed, but those cases are distinguishable. In *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238 (S.D.N.Y. 2010), the Bank of China alleged an affirmative defense but sought a protective order to prevent **initial disclosures as to its defense**, except pursuant to Hague Convention protocols.  The court denied the bank's motion, reasoning that disclosure is self-executing and a **party** can't avoid producing the information supporting its defense.

In *Curveal Fashion*, a plaintiff in a trademark infringement suit obtained a $13.7 million default judgment and permanent injunction that enjoined financial institutions.  *Gucci Am., Inc. v. Curveal Fashion*, No. 09-Civ-0458, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010). Although there the court ordered a Malaysian bank's New York agency to comply with the subpoena, that agency **waived** its objections. The Malaysian bank also failed to present the kind of evidence the Agency has presented. *See generally* Zambrano Semblantes Decl. In addition, some of the agency's actions were not in good faith. And unlike plaintiff there, Chevron cannot argue that, without this discovery, it would be left without a remedy.

Even assuming the *Aérospatiale's* footnote factors or the Restatement apply, the balance of factors favors the non-parties:

> **i.     The importance to the litigation of the documents or other information requested**

Chevron argues that it has a "prompt need" for this discovery and "[e]vidence that the [Lago Agrio Plaintiffs] are perpetuating an $18.2 billion fraud in Ecuador is at the core of the Treaty Arbitration and the pending appeal of the Judgment." D.E. 4 at 28. That said, Chevron has not established that the outcome of its foreign arbitration stands or falls on the discovery order it seeks.  Thus, the documents it seeks appear to fall on the "merely relevant" end of the spectrum; not the "crucial" end. *See Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010). Chevron also waited several months after the related case in this district—in which it sought the identical documents—was stayed before filing the Application. This too undercuts its

argument that it has a prompt need for this discovery. Thus, this factor weighs in the Agency's favor.

### ii.        The degree of specificity of the request

This factor weighs in Chevron's favor because its subpoena identifies account numbers.

### iii.        Whether the information originated in the United States

As Chevron's own case recognized, this factor "only addresses the physical location of the documents." *Gucci Am., Inc. v. Curveal Fashion*, No. 09-Civ-0458, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010) (concluding that third factor weighed in favor of bank, even though it agreed that it had "control" over documents held by its Malaysian subsidiary).  Here, to the extent that records responsive to the Subpoenas may exist, other than those already produced by the Agency in response to the prior subpoena, they would be maintained solely under the control and possession of the Bank in the Republic of Ecuador, not the Agency. Acosta Decl. ¶ 18.

Although customers of the Bank and customers of the Agency can have secure, direct internet access to certain of their account information and documentation at either the Bank or the Agency, the Agency itself does not have internet, or other electronic, access to information and documentation relating to customer accounts maintained at the Bank in the Republic of Ecuador.  *Id.* ¶ 19. The Bank's internet platform is proprietary to it, and the servers of the Bank reside in Ecuador; conversely, the Agency's internet platform is proprietary to it and the servers of the Agency reside in the U.S. *Id.*  Furthermore, although the Agency publishes certain privacy disclosures (as required by United States law) permitting the Agency to share with its affiliates (such as the Bank) information relating to the Agency's account customers, the Bank *does not* share with the Agency information relating to the latter's account customers in Ecuador since such sharing is not permitted under Ecuadorian law. *Id.* ¶ 20; Zambrano Semblantes Decl at 4-7. Thus, this factor weighs in the Agency's favor.

### iv.        The availability of alternative means of securing the information

The letters rogatory process is available to Chevron in order to obtain a court order in Ecuador authorizing the disclosure of customer records in the custody, possession or control of the Bank in Ecuador.  Zambrano Semblantes Decl. at 4-5, 8-9; Acosta Decl. ¶ 26; *see* D.E. 1 at 19 ("Accordingly, letters rogatory are the only available method for Chevron…."). Yet Chevron has not even attempted to use letters rogatory or any other international discovery procedure.

17

In the past, Chevron only speculated that using letters rogatory would be unduly time consuming and expensive. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 561-62 (1987) (Blackmun, J., concurring in part and dissenting in part) ("[S]uch statements can be nothing other than speculation"). Even so, unless the costs become prohibitive, saving time and money is not such a high priority in discovery that some additional burden cannot be tolerated in the interest of international goodwill. *Id.* at 562.

By contrast, the Agency has done all it can. *See* Acosta Decl. ¶¶ 14-17, 21-26. Ecuadorian law does not provide a procedure, either administrative or judicial, pursuant to which the Bank could directly obtain legal permission to disclose customer information/documents to a third party. Acosta Decl. ¶ 25.  Conversely, Chevron could at least attempt to secure *Ghedoni* waivers.  Instead, Chevron advocates "a raw exercise of [the Court's] jurisdictional power to the detriment of the United States' national and international interests", which "is particularly unfortunate in a world in which regular commercial and legal channels loom ever more crucial." *Aérospatiale*, 482 U.S. at 548 (Blackmun, J., concurring in part and dissenting in part). Again, Chevron's desire for haste because of the pendency of the foreign arbitration does not justify a departure from authorized procedures. *See Ings v. Ferguson*, 282 F.2d 149, 153 (2d Cir. 1960).

v.      **Important interests of the United States and Ecuador**

The Republic of Ecuador has codified the right to privacy—a human right—in multiple laws. *See* General Law of Financial System Institutions, Ch. III, Arts. 88-94; Rules and Regulations of the General Law on Financial System Institutions, Tit. VIII, Art. 36-39; Zambrano Semblantes Decl. at 1-7. Compliance with Chevron's request would undermine important Ecuadorian interests and would expose the Bank and its employees to significant civil and criminal penalties.  Zambrano Semblantes Decl. at 2, 7-9; Acosta Decl. ¶¶ 23-24.

Ecuador's laws are also similar to the very strict obligations of privacy/confidentiality arising under applicable U.S. and Florida statutory, regulatory, common and even Florida Constitutional law.  *See, e.g.,* Fla. Const. art. I, § 23 ("Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."); 15 U.S.C. §§ 6801-6809 (2010) (Gramm-Leach-Bliley Act); Fla. Stat. § 655.059 (2011) ("The books and records pertaining to the deposit accounts and loans of

18

depositors, borrowers, members, and stockholders of any financial institution shall be kept confidential by the financial institution . . ..").[6]

### vi. Hardship the responding party would suffer if it complied with the discovery demands

Chevron's own case recognized that courts have taken other factors into account: 1) any hardship the responding party would suffer if it complied with the discovery demands; and 2) whether the responding party has proceeded in good faith. *See, e.g., Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010). Here, the hardship is severe. *See* Zambrano Semblantes Decl. at 2, 7-9; Acosta Decl. ¶ 24. The employees of the Bank who would be responsible for producing any subpoenaed records are located in Ecuador and are citizens and residents of the Republic of Ecuador. Acosta Decl. ¶ 22. Production of any Bank customer documents under the Subpoenas would constitute a serious violation of multiple Ecuadorian laws and thereby expose the Bank and its employees to significant civil and criminal penalties. Zambrano Semblantes Decl. at 2, 7-9; Acosta Decl. ¶ 24.

### vii. Good faith of the Agency

Chevron cannot show that the Agency's responses to its prior subpoenas were not made in good faith. *See Minpeco, S.A. v. Conticommodity Servs., Inc.*, 118 F.R.D. 331 (S.D.N.Y. 1988). The Agency has produced to Chevron's counsel copies of all of the documents in the Agency's custody, possession or control responsive to the Subpoenas. *Id.* The Agency has brought the Subpoenas to the attention of the Bank, which in turn has informed the Agency that the Bank cannot produce information/documents of its customer accounts that may be responsive to the Subpoenas without a resulting violation of Ecuadorian privacy/confidentiality laws. *Id.* ¶ 21.

---

[6] *See also* The Right to Financial Privacy Act (RFPA) 12 U.S.C. §§ 3401, *et seq.*; the Tax Equity and Fiscal Responsibility Act 26 U.S.C. §7609; and the Electronic Communications Privacy Act (ECPA) 18 U.S.C. §§ 2510, *et seq.* Furthermore, the U.S. also prohibits the disclosure of Suspicious Activity Reports ("SAR"). In fact, 31 U.S.C. § 5318(g)(2)(A) and federal regulations prohibit disclosure of a SAR *or even its existence* to any persons other than appropriate law enforcement and supervisory agencies. *See* 31 U.S.C. § 5318(g)(2)(A); 31 C.F.R. § 5318(g)(1); 12 C.F.R. § 208.20(j) (pertaining to institutions regulated by the FRB).

**E.    If the Court is not inclined to deny the Application, it should at least enter a stay to permit the foreign jurisdiction to decide these thorny issues.**

"This Court *could* now decide these factually complicated and legally complex issues of foreign law, but there is considerable risk that in doing so—based necessarily on limited presentations of the jurisprudence of other countries—error will result." *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D.Fla. 2011) (Goodman, Mag. J.). Accordingly, if the Court is not inclined to deny the Applications, the foreign jurisdiction—Ecuador—should be permitted to decide these thorny issues. Thus, at most, a limited stay should be authorized pending a special proceeding in the foreign court for the limited purpose of resolving the issue. *Id.* (citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 939 n. 110 (D.C. Cir. 1984) (noting that a district court need not resolve an unsettled question of foreign law because "the district court would have discretion to stay the action pending a special proceeding in the foreign court brought for the limited purpose of resolving that issue"); *Lehman Bros. v. Schein*, 416 U.S. 386, 389–91, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)).

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.
*Attorneys for Defendant Banco Pichincha, C.A., Miami Agency*
One Biscayne Tower, Suite 3400
2 South Biscayne Boulevard
Miami, FL  33131
Telephone:  305.376.6000
Facsimile:  305.376.6010

By:    */s/ Allison J. Cammack*
Clinton R. Losego
Florida Bar No.:  818054
closego@gunster.com
Allison J. Cammack
Florida Bar No.: 177224
acammack@gunster.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record and parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those who are not authorized to receive electronically Notices of Electronic Filing.

By:___*/s/ Allison J. Cammack*_____
        Allison J. Cammack

## SERVICE LIST

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Carlos M. Sires
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: 954.356.0011
Facsimile: 954.356.0022

*Attorneys for Petitioner Chevron Corporation*

*Of Counsel:*

GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Andrea E. Neuman
3161 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

MIA_ACTIVE 3994094.4