UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-cv-24599-MGC

Referred to Magistrate Judge William C. Turnoff by Jan. 11, 2012 Order (D.E. 16)

CHEVRON CORPORATION,

                Petitioner,

To Issue Subpoenas For The Taking Of
Depositions And The Production Of
Documents.

**CHEVRON CORPORATION'S MOTION TO STRIKE THE DECLARATIONS OF
PABLO FAJARDO AND JUAN PABLO SAENZ**

                              BOIES, SCHILLER & FLEXNER LLP
                              Stephen N. Zack
                              100 S.E. 2nd Street, Suite 2800
                              Miami, Florida 33131
                              Telephone: (305) 539-8400
                              Facsimile:  (305) 539-1307

                              Carlos M. Sires
                              Lauren F. Louis
                              401 East Las Olas Blvd., Suite 1200
                              Fort Lauderdale, Florida 33301
                              Telephone:  (954) 356-0011
                              Facsimile:   (954) 356-0022

                              *Attorneys for Petitioner Chevron Corporation*

*Of Counsel*
GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro [*Pro Hac Vice*]
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035

Andrea E. Neuman [*Pro Hac Vice*]
3161 Michelson Drive
Irvine, CA 92612
Telephone:  (949) 451-3800
Facsimile:  (949) 451-4220

Chevron Corporation ("Chevron") hereby requests that the Court strike the declarations of the Lago Agrio Plaintiffs' (the "LAPs") Ecuadorian lawyers Juan Pablo Sáenz and Pablo Fajardo, submitted in support of their opposition. The LAPs submitted substantive declarations from these witnesses to defeat Chevron's application for discovery pursuant to Section 1782 (the "Application"), but they have refused to produce them for deposition prior to the upcoming May 4, 2012 hearing on the merits of Chevron's Application. Courts have consistently recognized that the failure to produce a declarant for deposition should result in the striking of that witness's proffered testimony. *See, e.g., Palm Beach Strategic Income, LP v. 358 1276 Canada Inc.*, No. 08-80186, 2009 WL 7466346, at *4 (S.D. Fla. Feb. 10, 2009) (Middlebrooks, J.); *Richardson v. Honda Mfg. of Alabama, LLC*, 635 F. Supp. 2d 1261, 1265 n.2 (N.D. Ala. 2009); *Crawford v. NCB, Inc.*, No. 00-6625, 2001 U.S. Dist. LEXIS 10261, at *2-3 (S.D. Fla. May 4, 2001) (Johnson, M.J.), *adopted by* 2001 U.S. Dist. LEXIS 8925 (S.D. Fla. May 17, 2001) (Dimitrouleas, J.). Here, the Fajardo and Sáenz declarations are rife with misstatements and false innuendos. They have serious authentication problems, and address issues that are irrelevant to Chevron's Application. For these reasons, they should be stricken.

Fajardo and Sáenz are key members of the LAP's Ecuadorian legal team. *See* Ex. 250; Ex. 251 at Schedule 4; Ex. 252 at 586:25-587:5, 1648:7-12, 2471:8-15.[1] Fajardo has been, in many ways, the face of the long-running litigation against Chevron. *See* Ex. 251 at Schedule 4 (defining Fajardo as <u>the</u> "Ecuador Attorney" for the LAPs). After the LAPs submitted their declarations in opposition to Chevron's 28 U.S.C. § 1782 application for discovery from Banco Pichincha, Chevron noticed their depositions. But the LAPs declined to produce them, claiming they are under "no compulsion" to produce their own lawyer-witnesses because they do not "represent" Fajardo and Sáenz, and because these lawyer-witnesses reside in Ecuador. But whether the LAPs' counsel also represents Fajardo and Sáenz is beside the point. The fact that the LAPs' proffered the declarations in this Court suffices to require them to produce the witnesses for deposition. Moreover, pursuant to the LAPs' funding agreements, the LAPs, via Fajardo as their counsel, agreed to use their best efforts to make themselves and their attorneys available "for the preparation of statements, to subscribe to the same under oath if required, . . .

---

[1] Exhibits 250-255 cited herein are attached to the concurrently filed Supplemental Declaration of Kristen L. Hendricks. All other exhibits cited herein have been previously filed with the Court in support of this Application and are referenced by their docket numbers.

and to appear at any hearings (including hearings located abroad) reasonably required in connection with such statements or the Claim generally." *Id.* § 5.1(d).

Thus, aside from the fact that the witnesses are the LAPs' own lawyers, Fajardo himself agreed—on behalf of the LAPs and on behalf of himself as their Ecuadorian counsel—that the LAPs would use their best efforts to cause Fajardo and Sáenz to appear for deposition in proceedings such as this one. Having nonetheless chosen not to produce these witnesses—who continue to actively represent the LAPs in Ecuador—for questioning, the LAPs cannot now attempt to continue to rely on their testimony. *See, e.g., Palm Beach Strategic Income*, 2009 WL 7466346, at *4 (explaining that striking the affidavit of defendant's Financial Director was appropriate where Financial Director did not appear for his deposition); *Richardson*, 635 F. Supp. 2d at 1265 n.2 ("The court's reasoning behind its decision to strike both of [non-party witness] McDaniel's declarations in this case stemmed in part from its grave concern about the overall reliability of such evidence, given McDaniel's repeated refusal to appear for a deposition."); *Crawford*, 2001 U.S. Dist. LEXIS 10261, at *3 (finding that "it would be unfair to allow Plaintiff to submit the subject affidavits and retain these individuals as witnesses," where defendant had been unable to depose the witnesses due to plaintiff's failure to disclose valid addresses).

The untested Fajardo and Sáenz declarations are riddled with misrepresentations that should not be permitted to stand as part of the record in this proceeding, given the LAPs' claim that these witnesses are unavailable for the questioning that would reveal the statements' falsehoods. As just one example, the Fajardo Declaration cites a November 2007 filing by Cabrera, claiming that "Cabrera filed an official complaint with the Lago Agrio Court claiming that members of Chevron's legal team in Ecuador subjected him to threats and insults when he would conduct his field work," and that "Cabrera asserted that unknown persons were following him and members of his technical team in Lago Agrio." D.E. 55-26 (Murphy Decl. Ex. U) ¶ 15. But Fajardo fails to disclose that he and other members of the LAPs' legal team in fact drafted this pleading for the supposedly "independent" Special Master Cabrera. *See* D.E. 6-2 at Page 193 of 215; Ex. 252 at 3121:23-3131:21; Ex. 253; Ex. 254. Nor does Fajardo disclose that Cabrera submitted this complaint that the LAPs drafted for him, in his own name, less than two months after the LAPs made a transfer of $50,000 to their "secret account," which was used to funnel illicit payments to Cabrera. *See* D.E. 58-4 at 4-5. Fajardo's declaration also includes suggestions—reiterated in the LAPs' opposition—that the LAPs' contact with Cabrera was

approved by the Lago Agrio court and permitted under Ecuadorian law.  This is false and its falsity could be demonstrated by questioning Fajardo on the relevant Lago Agrio court orders and provisions of Ecuadorian law, among other documents, including those in which Fajardo's co-counsel worried they might all "go to jail" if the truth about their improper relationship with Cabrera were exposed.  D.E. 6-2; *see also* D.E.s 6-1, 58-4, 58-16.

       The LAPs' U.S. lawyers have admitted that, after they drafted Fajardo's declaration in English, they "struggled with who would sign [it]."  Ex. 255 at Page 1 of 5.  Ultimately, they decided to have Fajardo sign it, rather than the LAPs' U.S. counsel, Steven Donziger, because "[i]f [Donziger] signs, he will most certainly be deposed. . . . We figured that with [Fajardo], they likely would not slow down the process by deposing him (as we would say the dep needs to go forward in Ecuador)."  *Id.*

       In addition, Donziger himself admitted at his deposition that the declaration in the name of Pablo Fajardo—who does not speak English—was drafted in English, and "translat[ed] for [Fajardo] *orally*" by Donziger before Fajardo signed it.  Ex. 252 at 2773:3-2780:4 (emphasis added).  Thus, it is unclear whether Fajardo was ever given a formal written translation of his declaration, or whether he even knew what he was signing when he executed the declaration—in English—that the LAPs submit here.  What *is* clear, however, is that the LAPs decided to submit the declaration in Fajardo's name in an effort to prevent Chevron from being able to test the declarant's assertions.  This kind of procedural gamesmanship should not be countenanced or rewarded.  The LAPs should not be allowed to use these witnesses' testimony as a sword, while hiding behind their Ecuadorian residency as a shield.

       The declaration of Juan Pablo Sáenz is likewise rife with misstatements.  The Sáenz declaration recites the alleged bases for the LAPs' "unclean hands" defense in Chevron's RICO case against the LAPs' lawyers and other conspirators.  But the LAPs know these allegations to be false.  For example, the Sáenz declaration claims that "Chevron deployed two mercenaries— one a convicted felon—to try and entrap a former presiding judge into prematurely disclosing his opinion of the case while secretly being videotaped."  D.E. 55-13 (Murphy Decl. Ex. H) ¶ 32.  But the LAPs' lawyers' own documents prove that they know this allegation is false—indeed, they knew it was false when Sáenz signed the declaration in February of last year.  In 2009, the LAPs hired Aitan Goelman, a former federal prosecutor, to review the evidence relating to these allegations and provide his opinion.  Upon reviewing the evidence, Mr. Goelman concluded that "it seems clear from the tapes that Chevron is telling the truth when they claim *not* to have

3

instructed Borja to make the first 3 tapes and *not* to have even known about these conversations until June." D.E. 58-124 at Pages 2-3 of 4 (emphases added). Goelman went on to say that, "rather than Chevron setting out to use Borja and Hansen to derail the litigation, Borja and Hansen [the two "mercenaries" allegedly "deployed" by Chevron (according to the Sáenz declaration)] set out to use Chevron. *Id.* at Page 3 of 4. This email was sent to LAPs' lawyer Steven Donziger and others in December 2009, well before Juan Pablo Sáenz signed his declaration in February 2011.

       The LAPs have submitted and relied upon these false and misleading declarations in this and multiple other proceedings in the United States, but have repeatedly refused to produce these witnesses for depositions in the United States. *See* Ex. 252 at 2773:3-2778:22. As counsel for the LAPs has once again confirmed that they do not intend to produce their own lawyer-declarants Fajardo and Sáenz for deposition—despite their ability to do so—the appropriate remedy is for this Court to strike the Fajardo and Sáenz declarations from the record. *See, e.g., Palm Beach Strategic Income,* 2009 WL 7466346, at *4; *Richardson*, 635 F. Supp. 2d 1261, 1265 n.2; *Crawford*, 2001 U.S. Dist. LEXIS 10261, at *2-3.

       Accordingly, Chevron respectfully requests that this Court strike Exhibits H and U to the Murphy Declaration (D.E.s 55-13, 55-26) and preclude the LAPs from relying on any statements contained in those declarations henceforth.

Miami, Florida
Dated: May 1, 2012

Respectfully submitted,

By: __/s/Carlos M. Sires_____

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack, Florida Bar No. 145215
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Carlos M. Sires, Florida Bar No. 319333
Lauren F. Louis, Florida Bar No. 39643
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Petitioner Chevron Corporation*

*Of Counsel:*

GIBSON, DUNN & CRUTCHER, LLP
Randy M. Mastro, New York Bar No. 1792548
[*Pro Hac Vice*]
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email: rmastro@gibsondunn.com

Andrea E. Neuman, Esq., California Bar No. 149733 [*Pro Hac Vice*]
3161 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Email: aneuman@gibsondunn.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Allison Jeanne Cammack
Clinton R. Losego
GUNSTER, YOAKLEY & STEWART, P.A.
2 South Biscayne Boulevard
Suite 3400
Miami, Florida 33131-1897
Telephone: (305) 376-6000
Facsimile: (305) 376-6010
Email: Acammack@gunster.com; CLosego@gunster.com

L. Martin Reeder , Jr.
Reeder & Reeder
250 S Central Boulevard
Suite 200
Jupiter, FL 33458
561-575-9750
Fax: 561-575-9765
Email: martin@reederandreeder.com

      /s/Carlos M. Sires
    Carlos M. Sires